2017 COA 7M

**Donna KOVAC, Plaintiff-Appellant,**

v.

**FARMERS INSURANCE EXCHANGE, Defendant-Appellee.**

Court of Appeals No. 16CA0167

Colorado Court of Appeals, Div. I.

Announced January 12, 2017

As Modified on Denial of Rehearing February 23, 2017

Gaddis, Kin, Herd & Craw, P.C., Thomas J. Herd, Colorado Springs, Colorado; Walter H. Sargent, P.C., Walter H. Sargent, Colorado Springs, Colorado, for Plaintiff-Appellant

Wells, Anderson & Race, LLC, L. Michael Brooks, Jr., Brandi J. Pummell, Denver, Colorado, for Defendant-Appellee

Opinion by JUDGE TAUBMAN

¶ 1 This is a personal injury action arising out of an underinsured motorist (UIM) claim brought by plaintiff, Donna Kovac, against defendant, Farmers Insurance Exchange (Farmers). On appeal, Kovac challenges the trial court's grant of Farmers' summary judgment motion on the grounds that Kovac's complaint was barred by the statute of limitations. We reverse the trial court's summary judgment and remand for further proceedings.

## I. Background

¶ 2 In October 2010, Kovac was seriously injured in a car accident with Kevin Filipelli. It was undisputed that Filipelli was at fault in the accident. Kovac claims to have incurred damages exceeding $1.4 million, including $50,960 in past medical expenses for treatments she attributes to the accident.

¶ 3 When the accident occurred, Filipelli was covered by automobile liability insurance with Shelter Insurance Company (Shelter) with a limit of $100,000. Kovac was insured under two different automobile insurance policies with Farmers.

¶ 4 On March 27, 2013, Shelter sent a written conditional offer to pay Kovac $100,000, the full extent of its policy coverage, "to fully settle the claim against" Filipelli. The letter continued, "If this amount is acceptable, please send us the enclosed release signed."

¶ 5 Shelter's release form required Kovac and her husband to acknowledge that they

were voluntarily accepting the agreement to fully and finally release all claims against Filipelli for injuries and damages from the accident. Along with the release form, Shelter included a check authorizing payment of $100,000 to Kovac and her law firm "upon acceptance."

¶ 6 Kovac's lawyer received this letter and check on April 1, 2013. On April 2, Kovac's lawyer notified Farmers that Shelter had tendered its policy limits, and he requested Farmers' consent to settle, which Farmers granted in a letter dated April 3 that Kovac's attorney received on April 4.

¶ 7 Kovac signed the release from Shelter and endorsed the check on April 5, 2013. The check was then deposited in the firm's COLTAF account.[1] Kovac received the funds several days later.

¶ 8 In March 2015, Farmers offered to settle Kovac's remaining claims for $80,000. The parties could not reach a settlement.

¶ 9 On April 3, 2015, Kovac commenced this action for (1) recovery of UIM benefits; (2) tortious bad faith breach of contract; and (3) unreasonable delay and denial of insurance benefits under sections 10–3–1115 and –1116, C.R.S. 2016.

¶ 10 Farmers moved for summary judgment on the grounds that, because Shelter had presented its offer of a settlement check to Kovac's attorney on or before April 2, 2013, the statute of limitations ran on Kovac's claim on April 2, 2015. The trial court granted summary judgment in favor of Farmers, concluding that regardless of when Kovac accepted the settlement offer from Shelter, her attorney had received the check not later than April 2, 2013, so the statute of limitations had already run by the time Kovac filed her complaint. The court declined to rule on the remaining claims.

## II. Summary Judgment Claim

¶ 11 Kovac contends on appeal that while her attorney received a settlement offer and accompanying check payable "upon accep-

---

1. A COLTAF (Colorado Lawyer Trust Account Foundation) account is an interest-bearing account used by attorneys and law firms to hold client funds separate from their own personal property as required under the Rules of Professional Conduct. *See* Colo. RPC 1.15A.

tance" of the offer no later than April 2, 2013, there was no settlement until April 5, 2013, when Kovac actually accepted the offer. Kovac maintains that because no settlement occurred until that date, she could not have received payment prior to April 5, 2013. Therefore, she contends, the statute of limitations did not run on her claim until after April 5, 2015. Because she filed her complaint on April 3, 2015, she asserts it was timely, and the trial court erred in granting summary judgment in favor of Farmers. We agree.

### A. Standard of Review

¶ 12 A trial court's grant of summary judgment is subject to de novo review. *Westin Operator, LLC v. Groh*, 2015 CO 25, ¶ 19, 347 P.3d 606, 611. A court properly grants summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." C.R.C.P. 56(c); *Lewis v. Taylor*, 2016 CO 48, ¶ 13, 375 P.3d 1205, 1208.

¶ 13 When a claim accrues under a statute of limitations is an issue of law. *Shaw Constr., LLC v. United Builder Servs., Inc.*, 2012 COA 24, ¶ 16, 296 P.3d 145, 150. We review de novo a trial court's application of the statute of limitations where the facts relevant to the date on which the statute of limitations accrues are undisputed. *Fiscus v. Liberty Mortg. Corp.*, 2014 COA 79, ¶ 13, 373 P.3d 644, 648, *aff'd on other grounds*, 2016 CO 31, 379 P.3d 278.

### B. Applicable Law

¶ 14 The purpose of the UIM statute is to give a UIM claimant the opportunity to collect a settlement or judgment against a tortfeasor driver and, based on that event, to decide whether to pursue further compensation from the UIM insurer. *Pham v. State Farm Auto. Ins. Co.*, 2013 CO 17, ¶ 21, 296 P.3d 1038, 1045. According to the statute,

> (1) ... [N]otwithstanding any other statutory provision to the contrary, all actions or arbitrations under sections 10–4–609 and 10–4–610, C.R.S., pertaining to insur-

ance protection against uninsured or underinsured motorists shall be commenced within the following time limitations and not thereafter:

> . . .

> (b) An action or arbitration of an "underinsured motorist" insurance claim, as defined in section 10–4–609(4), C.R.S., shall be commenced or demanded by arbitration demand within three years after the cause of action accrues; except that, if the underlying bodily injury liability claim against the underinsured motorist is preserved by commencing an action against the underinsured motorist or by payment of either the liability claim settlement or judgment within the time limit specified in sections 13–80–101(1)(n) and 13–80–102(1)(d), then *an action or arbitration of an underinsured motorist claim shall be timely if such action is commenced or such arbitration is demanded within two years after the insured received payment of the settlement or judgment on the underlying bodily injury liability claim.*

§ 13–80–107.5(b), C.R.S. 2016 (emphasis added). The statute does not define "received payment of a settlement."

¶ 15 Kovac relies on *Westby v. State Farm Mutual Automobile Insurance Co.*, a Colorado federal district court decision addressing the same issue in this case under the interpretation of an insurance policy with the same "received payment of a settlement" language mirroring the UIM statute. *See* No. 15–CV–00076–RBJ, 2016 WL 471357, at *3 n.2 (D. Colo. Feb. 8, 2016) (finding the language of the insurance policy and that of section 13–80–107.5(1)(b) to have the same effect).

¶ 16 Westby was injured in a car accident. With the consent of Westby's insurer, State Farm, Westby and the other motorist's insurer, Titan, settled for $25,000. Titan then sent a letter to Westby's attorney with a check, a release, and a proposed "Stipulation for Dismissal with Prejudice." The letter instructed the attorney to review, approve, sign, and return the documents, and not to disburse the settlement award until the documents had returned to Titan's office. The

attorney signed the documents and, upon return of the documents to Titan, the attorney disbursed the check to Westby.

¶ 17 Westby's medical bills exceeded the settlement award, so she submitted a demand to State Farm for UIM benefits. The two sides failed to settle the matter. State Farm informed Westby that the statute of limitations had expired on her claim, and it therefore owed her no money. The *Westby* court was then required to determine the meaning of the term "received payment" under the UIM provision of the policy.

¶ 18 According to the *Westby* court, a settlement is "an agreement ending a dispute or lawsuit." *Id.* at *6 (quoting Black's Law Dictionary 1581–82 (10th ed. 2014)) (applying Colorado law). "Such an agreement involves one party accepting a benefit—typically in the form of cash—in exchange for releasing the other party from future claims or suits." *Id.* The court determined that one could not receive payment on "any other artificial dates of transmission of funds ... pending her acceptance of the Release." *Id.* at *5. Further, "[i]t is a matter of common sense that the insured cannot receive settlement funds until after the parties have completed the settlement because up until ... the agreement is finalized, the insured is not legally entitled to any money." *Id.* at *6.

### C. Analysis

 ¶ 19 Although we are not bound by decisions of federal courts applying Colorado law, *Monez v. Reinertson*, 140 P.3d 242, 245 (Colo. App. 2006), we may look to federal decisions for guidance and follow the analysis that we find persuasive. *Cmty. Hosp. v. Fail*, 969 P.2d 667, 672 (Colo. 1998) (citing *People v. Barber*, 799 P.2d 936, 939–40 (Colo. 1990)). Because it provides persuasive guidance on Colorado law, we agree with the analysis in *Westby* and apply it to the facts in this case.

¶ 20 As in *Westby*, it is a matter of common sense to say that Kovac did not receive payment of her settlement until the settlement was final. Farmers contends that Kovac attempts to "manipulate" the statute by claiming that she was unable to receive payment until Farmers approved the settlement agreement. However, Farmers' approval of the settlement agreement was irrelevant because it is not an event mentioned anywhere in the UIM statute. Instead, the triggering event for the accrual of the statute of limitations under the UIM statute was the date Kovac accepted the settlement agreement and, in the words of the statute, "received payment of the settlement." That occurred on April 5, 2013, when she released her claims against Filipelli and accepted Shelter's $100,000 settlement check. Although Kovac's attorney received the settlement check before that date, the check itself said that payment would only occur "upon acceptance" of the settlement agreement and Shelter's letter to Kovac directed her to return a signed release "if this amount [$100,000] is acceptable."

¶ 21 Accordingly, Kovac's receipt of the money was conditioned on acceptance of the settlement agreement; she was not legally entitled to any of the funds until she signed the settlement agreement and returned it to Filipelli's insurer, Shelter. The date on which Kovac "received payment" of the settlement agreement was thus the date that she accepted the settlement agreement—April 5, 2013—and was legally entitled to the funds. Therefore, the statute of limitations had not run when she filed her claim against Farmers. To hold otherwise would undermine the purpose of the UIM statute, which is to allow a UIM claimant to receive a settlement check as payment for a settlement agreement and then, based on that event, decide whether to pursue further compensation from the UIM insurer.

¶ 22 Farmers argues that Kovac's interpretation of the statute would breed uncertainty in establishing the proper accrual date of the statute of limitations because an attorney could feasibly extend the date beyond the two-year period by withholding a settlement check. Farmers argues that the precise date on which a settlement agreement is completed is not always readily discernible, and that settlements can result from informal, unsigned, and even oral agreements. Thus, according to Farmers, the precise date on which a settlement agreement was actually reached may be highly uncertain in any

given case.[2] However, it is not for us to establish when a settlement is reached under the terms of the statute. We need determine only, assuming there was a settlement, when Kovac received the settlement funds.

¶ 23 Under Colorado law, "a settlement agreement is a contract and must generally be construed and enforced like any other contract." *Resolution Tr. Corp. v. Avon Ctr. Holdings, Inc.*, 832 P.2d 1073, 1075 (Colo. App. 1992). Under the common law, contracts are formed when there are unambiguous terms, an offer, and acceptance of that offer; such conditions also apply to the formation of a legally enforceable settlement agreement. *See Yaekle v. Andrews*, 195 P.3d 1101, 1111 (Colo. 2008).

¶ 24 Here, once Kovac accepted the settlement offer from Shelter, the terms of the settlement—payment of the settlement check in exchange for her release of claims—were valid and enforceable. By relying on the date of Kovac's acceptance, we eliminate uncertainty regarding the accrual date of the statute of limitations because it is the date when Kovac validly received payment.

¶ 25 In fact, relying on Farmers' interpretation of the statute and a retroactive procedure for establishing the date the statute of limitations accrues would likely breed more uncertainty than less, since courts would have to look back on any number of settlement award offers that occurred prior to acceptance.

¶ 26 Thus, Kovac's reliance on the date of the completed settlement, when payment was first legally valid, was the proper accrual date of the statute of limitations. Contrary to Farmers' argument, the record does not show that Kovac manipulated the deadline on her claims or created uncertainty under the statute.

¶ 27 Nevertheless, Farmers contends that Kovac's reliance on *Westby* is inapposite and that instead we should rely on *Stoesz v. State Farm Mutual Automobile Insurance Co.*, 2015 COA 86, ⸺ P.3d ⸺, where a division

of this court interpreted the meaning of "payment" in regard to the preservation of an underlying bodily injury claim pursuant to section 13–80–107.5(1)(b).

¶ 28 In *Stoesz*, ¶¶ 14, 17, ⸺ P.3d at ⸺, a division of this court refused to equate payment with "the date the parties reached a legally enforceable contractual agreement to pay." The *Stoesz* division held that the word "payment" means "the act of paying or giving compensation: the discharge of a debt or obligation." *Id.* at ¶ 11, ⸺ P.3d at ⸺ (quoting Webster's Third New International Dictionary 1659 (2002)). "Payment" discharges an obligation "by the delivery of money or some other valuable thing accepted in partial or full discharge of the obligation"; "[t]he money or other valuable thing [is] so delivered in satisfaction of an obligation." *Id.* (emphasis omitted) (quoting Black's Law Dictionary 1243 (9th ed. 2009)). "[P]ayment of the settlement must mark the commencement of the two-year period." *Pham*, ¶ 23, 296 P.3d at 1046.

¶ 29 However, the *Stoesz* division was concerned with a different part of subsection (1)(b) than the clause at issue here. The *Stoesz* court addressed whether the insured had preserved a UIM claim by obtaining payment of a settlement by the tortfeasor's liability insurer within three years of the date of the accident. *Stoesz*, ¶ 10, ⸺ P.3d at ⸺. It concluded that the plaintiff's UIM action was untimely because her claim was not properly "preserved" through payment of settlement funds within three years after the accident. *Id.* at ¶¶ 5–26, ⸺ P.3d at ⸺ – ⸺. The alleged existence of a settlement agreement, and even the agreement of the plaintiff's insurer to toll the statute of limitations pending approval of the settlement agreement, were insufficient to avoid the language of the statute requiring payment of the settlement within three years to "preserve" the UIM claim. *Id.* at ¶¶ 5, 10, 21, 26, ⸺ P.3d at ⸺ – ⸺.

¶ 30 The key difference between *Stoesz* and the case at hand is the operative statuto-

---

**2.** Farmers contended at oral argument that settlements are comprised of a continuum of events. To the extent that this argument is separate from the one recited here, we do not address it be-

cause it was raised for the first time during oral argument. *See Bumbal v. Smith*, 165 P.3d 844, 847 (Colo. App. 2007), *as modified on denial of reh'g* (Apr. 19, 2007).

ry phrases: in *Stoesz*, the court was concerned with the interpretation of the term "payment of ... the liability claim settlement" within three years. Here, in contrast, we are interpreting the phrase "received payment of a settlement" within two years, much like the *Westby* court. Indeed, as the *Stoesz* division noted, the terms "payment" of a settlement and "received payment" of a settlement in section 13–80–107.5(1)(b) are presumed to have different meanings. *See Westby*, 2016 WL 471357, at *5 & n.5. We thus reject Farmers' argument.

¶ 31 Farmers further contends that *Westby* is inapplicable because the court relied on the interpretation of an insurance policy to discern the meaning of "received payment." However, the *Westby* court stressed that its analysis of the policy language paralleled that contained in the UIM statute. *See id.* at *3 n.2. The analysis did. Thus, Farmers' second argument fails.

¶ 32 Farmers next argues that *Westby* is factually distinct because there, Titan included a letter with the check that specified not to disburse the settlement funds until the settlement paperwork had been returned to Titan. Farmers claims this clause was "integral to the *Westby* court's ruling," and that in contrast, here Kovac had no such conditions included in her letter or attached to the check. However, as noted, the $100,000 check Kovac received included the words "upon acceptance, pay to the order of ...." and her letter from Shelter, as noted above, also contained conditional language. Contrary to Farmers' assertions, the check contained a restriction on the timing of the disbursement of funds: Kovac was not to be paid before acceptance of the settlement agreement. Further, like in *Westby*, the letter communicated the conditional nature of the payment by saying, "*If* this amount is acceptable, please send us the enclosed release signed." (Emphasis added.)

¶ 33 We conclude there is no factual or legal distinction between *Westby* and the case before us, and that Farmers incorrectly relies on *Stoesz*, a case factually distinct from the one at hand. Therefore, because Kovac did not receive payment of a settlement until April 5, 2013, her lawsuit was timely filed.

## III. Conclusion

¶ 34 Accordingly, we reverse the summary judgment and remand for further proceedings consistent with the views expressed in this opinion.

JUDGE DUNN and JUDGE ASHBY concur.