The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Paul MONTOYA, Defendant–Appellee.

No. 86SA22.

Supreme Court of Colorado,
En Banc.

March 28, 1988.

James F. Smith, Dist. Atty., Steven L. Bernard, Chief Trial Deputy, Joseph M. Elio, Deputy Dist. Atty., Brighton, for plaintiff-appellant.

Epstein, Lozow and Lipkin, P.C., Bradley A. Lozow, Donald L. Lozow, Denver, for defendant-appellee.

QUINN, Chief Justice.

The People appeal from a pretrial dismissal of three counts of conspiracy to distribute a class II controlled substance, cocaine, which had been filed against the defendant, Paul Montoya. The district court entered a judgment of dismissal on the ground that there was insufficient evidence, apart from the statements of the defendant's alleged co-conspirators, to establish the evidentiary antecedents for admitting the statements under CRE 801(d)(2)(E).[1] We conclude that the district court erred in not considering the statements of the alleged co-conspirators in determining whether the prosecution, as the proponent of the challenged evidence, had established by a preponderance of the evidence the preliminary conditions for admissibility prescribed by CRE 801(d)(2)(E). We accordingly reverse the judgment of dismissal and remand the case to the district court for further proceedings.

I.

The defendant was charged by information with three counts of conspiracy to distribute a class II controlled substance, namely, cocaine. See § 18–18–105(1)(a), 8 C.R.S. (1987 Supp.); § 12–22–310, 5 C.R.S. (1985). The first two counts alleged that the defendant on July 4, 1984, and again on July 20, 1984, conspired with Ray Montoya and other unknown persons to distribute cocaine. The third count alleged that on August 3, 1984, the defendant conspired with Ray Montoya, Priscilla Montoya, and other unknown persons to distribute cocaine.

After a finding of probable cause at a preliminary hearing, the defendant entered a not guilty plea to the charges and subsequently filed a motion to dismiss, asserting that there was not sufficient evidence, separate and apart from the statements of the alleged co-conspirators, linking the defendant to any conspiracy. A pretrial hearing was held on the motion. At the hearing the People proceeded by way of an oral offer of proof as to the existence of the conspiracies alleged in the three counts and, as pertinent here, the preliminary conditions for admissibility of the alleged co-conspirators' statements under CRE 801(d)(2)(E).

The People's offer of proof set forth the following facts. On July 4, 1984, Reserve Officer Michael Stanley, who was working in an undercover capacity for the Brighton Police Department, met with Ray Montoya at Montoya's house at 226 South Second Street in Brighton and discussed the possibility of purchasing three and one-half grams of cocaine. Ray told Stanley that it was necessary to go to another location in order to purchase the cocaine from his brother, Paul. Stanley and Ray drove to a house at 344 North 15th Street in Brighton.

---

1. The People prosecute this appeal pursuant to section 16–12–102(1), 8A C.R.S. (1986), which authorizes the prosecution to appeal any decision of a trial court in a criminal case upon a question of law.

Officer Stanley later determined that this house belonged to the defendant, Paul Montoya.

After arriving at the house, Ray Montoya went inside by himself and came out a few minutes later with a paper bindle containing a half gram of cocaine. Officer Stanley examined the half gram, and gave Ray $350 to purchase three additional grams of cocaine. Ray then went back inside the house and returned to the car with the three grams of cocaine.

After Ray Montoya returned to the car with the three grams of cocaine, Stanley observed a man, whom he later identified as the defendant, appear at the door of the house and ask Ray to come back into the house. Ray did so, and the defendant handed him two beers. When Ray returned to the car Stanley asked him if they were at his brother's house. Ray replied: "Yes, that's Paul, the person you bought the drugs from."

Officer Stanley again met with Ray Montoya at Ray's house on July 20, 1984. After Stanley gave him $800 to purchase additional cocaine, Ray stated that he would get the cocaine from Paul and then left to pick up the cocaine while Stanley remained at the house. About thirty minutes later, Ray returned with 32 bindles of cocaine for which Stanley paid $800.

On August 3, 1984, Stanley and Reserve Officer Falliaux, who was also working in an undercover capacity with the Brighton Police Department, went to Ray Montoya's house and discussed the purchase of $3,000 worth of cocaine with him. Ray's wife, Priscilla, was present on this occasion. Ray placed a telephone call and asked for Paul. A conversation then took place between Ray and the person on the other line. After the telephone conversation Ray left the house and returned shortly thereafter with $3,000 worth of cocaine.

The People also made an offer of proof with respect to an alleged conspiracy charged in a fourth count of the information. This count, which had been severed from the other three, alleged that between August 9 and August 10, 1984, the defendant conspired with Pete Gabaldon, Paul Montoya, Priscilla Montoya, and other unknown persons to distribute 28 grams or more of cocaine. See § 18–18–105(1)(a), 8 C.R.S. (1986). The People's offer was predicated on the theory that evidence relating to the August 9–10 conspiracy was probative of the fact that the defendant was engaged in an ongoing conspiracy with Ray Montoya to distribute cocaine. According to the People's offer of proof, on August 9, 1984, Reserve Officers Stanley and Falliaux went to Ray's house and met with Priscilla Montoya. They told her that they were interested in purchasing $1,000 worth of cocaine. She told them that she would have to call Paul Montoya. Priscilla then placed the call, asked for Paul, and told him that Stanley wanted to go to Paul's house to buy some cocaine. Paul did not want Stanley to come to his house, however, so Priscilla went while Stanley and Falliaux remained at Ray and Priscilla's house. Priscilla returned fifteen minutes later with $1,000 worth of cocaine in glass pharmaceutical bottles.

While Priscilla was gone, Ray Montoya and Pete Gabaldon entered the residence. Ray told the officers that Paul Montoya and Gabaldon were the persons from whom Stanley had been purchasing the cocaine. Gabaldon confirmed this fact, stating that he and Paul were partners in selling cocaine in Brighton. Stanley then asked Gabaldon if he and Paul would sell Stanley $10,000 worth of cocaine on the following day. Gabaldon stated that he would check with Paul to see if they had that much cocaine available on such a short notice. Gabaldon then placed a telephone call and asked for Paul. After speaking with Paul, Gabaldon told Stanley that they could only sell him $6,000 worth of cocaine. Ray Montoya, Gabaldon, Stanley, and Falliaux went to two bars that day and continued to discuss the $6,000 order. During these discussions, several statements were made implicating Paul Montoya as the source of the cocaine. The next day, August 10, 1984, Stanley and Falliaux went to Ray Montoya's house, as arranged the day before. Falliaux and Ray Montoya then drove to Paul Montoya's house at 344

North 15th Street. Falliaux gave Ray the $6,000 and remained in the car while Ray went inside with the money. Ray returned with 28 grams of cocaine.

After listening to the People's offer of proof, the district court initially ruled that there was sufficient evidence of a conspiracy between the defendant and the other alleged co-conspirators to allow the introduction of the alleged co-conspirators' statements into evidence. The court, however, also informed the parties that it would hear further argument on this issue on the day of trial. Prior to the commencement of jury selection, the court heard additional argument and then, reversing its prior ruling, determined that there was not sufficient evidence, apart from the statements of the alleged co-conspirators, establishing the existence of a conspiracy involving the defendant and that, therefore, the evidentiary antecedents for admitting the alleged co-conspirators' statements under CRE 801(d)(2)(E) had not been established. The court granted the defendant's motion to dismiss, and the People then filed this appeal.

## II.

■ The precise evidentiary question confronting us is whether a trial court may consider an out-of-court statement of an alleged co-conspirator in order to establish the evidentiary conditions for admitting such statement into evidence. CRE 801(d)(2)(E) excludes from the definition of hearsay a statement offered against a party so long as the statement was made "by a co-conspirator of a party during the course and in furtherance of the conspir-

acy."[2] The evidentiary antecedents for admitting a co-conspirator's statement, therefore, consist of establishing that there was a conspiracy of which the defendant and the declarant were members and that the declarant made the statement during the course and in furtherance of the conspiracy. Before directly addressing the issue posed by this case, we take note of several evidentiary considerations that bear somewhat on this issue.

### A.

■ Under CRE 104(a), it is the trial judge who must determine whether an adequate evidentiary foundation has been established for the admission of challenged evidence. A trial court's ruling on that question will necessarily be fact-specific in nature. While a pretrial ruling on the admissibility of certain evidence may serve to expedite the trial itself by eliminating hearings outside the presence of the jury, see Uptain v. Huntington Lab, Inc., 723 P.2d 1322, 1330 (Colo.1986), it will be a rare occasion when a trial court can make an informed ruling on the admissibility of a co-conspirator's statement on the basis of an offer of proof made at the pretrial phase of the case. We have previously observed that factors bearing on the admissibility of a particular item of evidence can best be evaluated in the context of the "evidentiary state of the record at trial rather than in the artificial atmosphere of a pretrial motion." Higgs v. District Court, 713 P.2d 840, 859 (Colo.1985). Although a trial judge has considerable discretion under CRE 611(a) in controlling the order of proof, and under CRE 104(a) in resolving

---

**2.** The basis for excluding a co-conspirator's statement from the definition of hearsay is the fact that such a statement is in the nature of an admission by a party-opponent. As stated in the Advisory Committee's Note to Federal Rule 801(d)(2)(E), of which CRE 801(d)(2)(E) is an identical counterpart:

> Admissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule. Strahorn, A Reconsideration of the Hearsay Rule and Admissions, 85 U.Pa.L.Rev. 484, 564 (1937); Morgan, Basic Problems of Evidence

265 (1962); 4 Wigmore § 1048. No guarantee of trustworthiness is required in the case of an admission. The freedom which admissions have enjoyed from technical demands of searching for an assurance of trustworthiness in some against-interest circumstance, and from the restrictive influences of the opinion rule and the rule requiring firsthand knowledge, when taken with the apparently prevalent satisfaction with the results, calls for generous treatment of this avenue to admissibility.

Rules of Evidence for United States Courts and Magistrates, 56 F.R.D. 183, 297 (1973).

preliminary questions concerning the admissibility of evidence, we believe that the fact-specific nature of issues relating to admissibility can best be resolved in the context of the actual state of the record at the time the challenged evidence is offered. A court's ruling on the admissibility of a co-conspirator's statement under CRE 801(d)(2)(E), therefore, should normally be made during the presentation of the prosecution's case in chief and before the challenged statement is actually heard by the jury. *See United States v. Petersen*, 611 F.2d 1313, 1330 (10th Cir.1979), *cert. denied*, 447 U.S. 905, 100 S.Ct. 2985, 64 L.Ed. 2d 854 (1980); *United States v. James*, 590 F.2d 575, 582 (5th Cir.), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). We emphasize here that, even if the evidence is ruled inadmissible, the court has no authority to dismiss criminal charges solely on the basis of its evidentiary ruling.

■ The Rules of Evidence do not establish the standard of proof applicable when deciding preliminary questions of admissibility. The preponderance of evidence standard, as we recently noted, is "the traditional standard applicable to the resolution of most preliminary questions of admissibility," *People v. Romero*, 745 P.2d 1003, 1016 (Colo.1987), and we believe it should apply to evidentiary rulings under CRE 104(a). In this respect we adhere to the analysis recently employed by the United States Supreme Court in *Bourjaily v. United States*, — U.S. —, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). In adopting the preponderance of evidence standard for resolving the admissibility of a co-conspirator's statement under Rule 801(d)(2)(E) of the Federal Rules of Evidence, which is identical to CRE 801(d)(2)(E), the Court observed as follows:

> We have traditionally required that these matters be established by a preponderance of proof. Evidence is placed before the jury when it satisfies the technical requirements of the evidentiary Rules, which embody certain legal and policy determinations. The inquiry made by a court concerned with these matters is not whether the proponent of the evidence wins or loses his case on the merits, but whether the evidentiary Rules have been satisfied. Thus, the evidentiary standard is unrelated to the burden of proof on the substantive issues, be it a criminal case, see *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), or a civil case. See generally *Colorado v. Connelly*, 479 U.S. 157, —, 107 S.Ct. 515, —, 93 L.Ed.2d 473 (1986). The preponderance standard ensures that before admitting evidence, the court will have found it more likely than not that the technical issues and policy concerns addressed by the Federal Rules of Evidence have been afforded due consideration. As in *Lego v. Twomey*, 404 U.S. 477, 488, 92 S.Ct. 619, 626, 30 L.Ed.2d 618 (1972), we find "nothing to suggest that admissibility rulings have been unreliable or otherwise wanting in quality because not based on some higher standard." We think that our previous decisions in this area resolve the matter. See, *e.g.*, *Colorado v. Connelly, supra* (preliminary fact that custodial confessant waived rights must be proved by preponderance of the evidence); *Nix v. Williams*, 467 U.S. 431, 444, n. 5, 104 S.Ct. 2501, 2509, n. 5, 81 L.Ed.2d 377 (1984) (inevitable discovery of illegally seized evidence must be shown to have been more likely than not); *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) (voluntariness of consent to search must be shown by preponderance of the evidence); *Lego v. Twomey, supra* (voluntariness of confession must be demonstrated by a preponderance of the evidence). Therefore, we hold that when the preliminary facts relevant to Rule 801(d)(2)(E) are disputed, the offering party must prove them by a preponderance of the evidence.

*Id.* 107 S.Ct. at 2778–79 (footnote omitted). The prosecution, therefore, as the proponent of a co-conspirator's statement, bears the burden of establishing by a preponderance of the evidence that the defendant and the declarant were members of a conspiracy and that the declarant's statement was

made during the course and in furtherance of the conspiracy.

 Although CRE 104(b) authorizes a trial court to admit a co-conspirator's statement conditionally—that is, subject to "the introduction of evidence sufficient to support a finding of the fulfillment of the condition"—the preferred procedure, in our view, is to require the prosecution to establish the foundational requirements for the admission of a co-conspirator's statement prior to any offer of the statement into evidence before the jury. This procedure avoids the danger of exposing to the jury evidence which ultimately might be ruled inadmissible. *See United States v. Macklin,* 573 F.2d 1046, 1049 n. 3 (8th Cir.), *cert. denied,* 439 U.S. 852, 99 S.Ct. 160, 58 L.Ed.2d 157 (1978). If the co-conspirator's statement is conditionally admitted, and the prosecution does not subsequently satisfy the evidentiary predicates for admissibility, then the court must instruct the jury to disregard the statement or, in appropriate circumstances and upon motion, declare a mistrial if the cautionary instruction to the jury will not suffice to cure the prejudice caused by conditionally admitting the statement into evidence. *See, e.g., United States v. Ciampaglia,* 628 F.2d 632, 638 (1st Cir.), *cert. denied,* 449 U.S. 956, 101 S.Ct. 365, 66 L.Ed.2d 221 (1980); *United States v. Bell,* 573 F.2d 1040, 1044 (8th Cir.1978).

### B.

 We turn now to the question of whether a trial judge may consider the alleged co-conspirator's statement in determining whether the prosecution has met its burden of establishing the evidentiary conditions for admitting the statement under CRE 801(d)(2)(E)—namely, that there was a conspiracy of which the defendant and the declarant were members and that the declarant made the statement during the course and in furtherance of the conspiracy. We conclude that a trial court may consider the statement of an alleged co-conspirator in determining whether the prosecution has established the evidentiary conditions for admissibility prescribed by CRE 801(d)(2)(E), but that the statement itself

cannot be the sole basis for establishing those foundational requirements.

Prior to the adoption of the Federal Rules of Evidence, which became effective on July 1, 1975, the general rule applicable in federal prosecutions was derived from *Glasser v. United States,* 315 U.S. 60, 74–75, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942). In *Glasser,* the United States Supreme Court held that an alleged co-conspirator's statement is admissible only "if there is proof *aliunde* that he is connected with the conspiracy," for otherwise the alleged co-conspirator's hearsay statement "would lift itself by its own bootstraps to the level of competent evidence." *Id.; see also United States v. Nixon,* 418 U.S. 683, 701, 94 S.Ct. 3090, 3104, 41 L.Ed.2d 1039 (1974). Federal courts interpreted the so-called "bootstrapping prohibition" articulated in *Glasser* to mean that the admissibility of a co-conspirator's statement must be determined by evidence entirely independent of the declaration. *E.g., United States v. Frol,* 518 F.2d 1134, 1136 (8th Cir.1985); *United States v. Bey,* 437 F.2d 188, 191 (3d Cir.1971); *Glover v. United States,* 306 F.2d 594 (10th Cir.1962). Subsequent to the effective date of the Federal Rules of Evidence, however, some federal courts have held that the statement of an alleged co-conspirator itself may be considered in determining whether the evidentiary antecedents for admissibility have been established. *E.g., United States v. Vinson,* 606 F.2d 149, 153 & n. 8 (6th Cir.1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980); *United States v. Martorano,* 561 F.2d 406, 408 (1st Cir.1977), *cert. denied,* 435 U.S. 922, 98 S.Ct. 1484, 55 L.Ed.2d 515 (1978); *United States v. Cryan,* 490 F.Supp. 1234, 1241 (D.N.J.), *aff'd,* 636 F.2d 1211 (3d Cir.1980).

In *People v. Schlepp,* 184 Colo. 28, 518 P.2d 824 (1974), and again in *People v. Braly,* 187 Colo. 324, 532 P.2d 325 (1975), both decided prior to the promulgation of the Colorado Rules of Evidence, we adopted the *Glasser* prohibition against bootstrapping and held that there must be competent evidence, independent of the hearsay statement, establishing the con-

spiracy and the defendant's connection therewith as a condition precedent to admissibility. *Braly,* 187 Colo. at 328, 532 P.2d at 327; *Schlepp,* 184 Colo. at 32, 518 P.2d at 826.[3] Inasmuch as the instant case is controlled by the Colorado Rules of Evidence, we must look to those rules in determining the preliminary conditions necessary for the admission of an alleged co-conspirator's statement under CRE 801(d)(2)(E).

CRE 104(a) states that the trial judge "is not bound by the Rules of Evidence except those with respect to privileges" in determining preliminary questions concerning the admissibility of evidence.[4] This rule embodies the policy determination that the trial judge will generally be fully cognizant of any inherent weakness in proffered evidence and will take such weakness into account in evaluating its weight on the preliminary question of admissibility. *See* J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 104[02], p. 104–22 (1986). Similarly, CRE 1101(d)(1) states that the Rules of Evidence, other than those with respect to privileges, do not apply to "[t]he determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the court under Rule 104."

In *Bourjaily,* 107 S.Ct. 2775, the United States Supreme Court construed Federal Rule 801(d)(2)(E) and held that a court, in making a preliminary factual determination under Rule 801(d)(2)(E), may examine the alleged co-conspirator's statement sought to be admitted. *Id.* at 2782. In so holding, the Court rejected the argument that admitting the alleged co-conspirator's statement without first establishing the conspiracy by independent evidence would result in utilizing the unreliable co-conspirator's statement to establish the evidentiary antecedent to its admissibility and thus result in a fundamental change in the co-conspirator exception. The Court observed as follows:

[Bourjaily's] theory ignores two simple facts of evidentiary life. First, out-of-court statements are only *presumed* unreliable. The presumption may be rebutted by appropriate proof. See Fed. Rule Evid. 803(24) (otherwise inadmissible hearsay may be admitted if circumstantial guarantees of trustworthiness demonstrated). Second, individual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it. The sum of an evidentiary presentation may well be greater than its constituent parts. Taken together, these two propositions demonstrate that a piece of evidence, unreliable in isolation, may become quite probative when corroborated by other evidence. A *per se* rule barring consideration of these hearsay statements during preliminary factfinding is not therefore required. Even if out-of-court declarations by co-conspirators are presumptively unreliable, trial courts

---

**3.** Both *People v. Schlepp,* 184 Colo. 28, 518 P.2d 824 (1974), and *People v. Braly,* 187 Colo. 324, 532 P.2d 325 (1975), proceeded from a common-law analysis of the co-conspirator exception to the rule against hearsay. To the extent that these decisions are inconsistent with our holding today, they are expressly overruled.

**4.** The Advisory Committee's Note to Federal Rule 104 states, in pertinent part, as follows:

If the question is factual in nature, the judge will of necessity receive evidence pro and con on the issue. The rule provides that the rules of evidence in general do not apply to this process. McCormick § 53, p. 123, n. 8, points out that the authorities are "scattered and inconclusive," and observes:

"Should the exclusionary law of evidence, 'the child of the jury system' in Thayer's phrase, be applied to this hearing before the judge? Sound sense backs the view that it should not, and that the judge should be empowered to hear any relevant evidence, such as affidavits or other reliable hearsay."

This view is reinforced by practical necessity in certain situations. An item, offered and objected to, may itself be considered in ruling on admissibility, though not yet admitted in evidence. Thus the content of an asserted declaration against interest must be considered in ruling whether it is against interest. Again, common practice calls for considering the testimony of a witness, particularly a child, in determining competency. Another example is the requirement of Rule 602 dealing with personal knowledge. In the case of hearsay, it is enough, if the declarant "so far as appears [has] had an opportunity to observe the fact declared." McCormick, § 10, p. 19.

*Rules of Evidence for United States Courts and Magistrates,* 56 F.R.D. 183, 297 (1973).

may be permitted to evaluate these statements for their evidentiary worth as revealed by the particular circumstances of the case. Courts often act as factfinders, and there is no reason to believe that courts are any less able to properly recognize the probative value of evidence in this particular area. The party opposing admission has an adequate incentive to point out the shortcomings in such evidence before the trial court finds the preliminary facts. If the opposing party is unsuccessful in keeping the evidence from the factfinder, he still has the opportunity to attack the probative value of the evidence as it relates to the substantive issue in the case. See, *e.g.*, Fed.Rule Evid. 806 (allowing attack on credibility of out-of-court declarant).

*Id.* at 2781 (emphasis in original). We agree with the reasoning employed by the United States Supreme Court in *Bourjaily* and hold that a trial court may consider, in addition to any other evidence, the statement of an alleged co-conspirator in determining whether the prosecution has established the evidentiary antecedents for admitting the alleged co-conspirator's statement under CRE 801(d)(2)(E).

■ We hasten to add, however, that while the alleged co-conspirator's statement may properly be considered in resolving the issue of admissibility, there must also be some evidence, independent of the alleged co-conspirator's statement, establishing that the defendant and the declarant were members of the conspiracy. *See United States v. Kragness*, 830 F.2d 842, 866 (8th Cir.1987) ("trial court may rely at least in part on the putative coconspirator's declaration to determine that the defendant was a party to the conspiracy"); *United States v. Perez*, 823 F.2d 854, 855 (5th Cir.1987) ("[co-conspirator's] statement itself can properly be considered along with the other evidence in determining whether the ... declarant was the defendant's coconspirator"); *United States v. Cryan*, 490 F.Supp. at 1241 ("better rule is that, although the challenged statement *alone* cannot establish its admissibility against a non-declarant, that statement *along with* other evidence may establish its admissibi-

ty") (emphasis in original). Although the issue of corroborative evidence was not answered in *Bourjaily*, we believe this requirement is necessary to reduce the risk of "bootstrapping" the evidentiary antecedents for admissibility to the level of competent evidence. This additional requirement, in our view, will contribute some measure of reliability both to the statement itself and to the process by which its admissibility is determined. Without this added safeguard, the out-of-court statement could be put to the double service of establishing its own foundation for admissibility and thereby conceivably providing the sole evidentiary basis for a criminal conviction. *See United States v. Petrozziello*, 548 F.2d 20, 23 n. 2 (1st Cir. 1977). Before a statement is admissible under CRE 801(d)(2)(E), therefore, the prosecution, as the proponent of the statement, must present some evidence, apart from the statement itself, which serves to corroborate the defendant's and the declarant's membership in the conspiracy. This corroborating evidence may take many forms, including circumstantial evidence of the conspiracy, *see United States v. Scholle*, 553 F.2d 1109, 1117 (8th Cir.), *cert. denied*, 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977); *Nunez v. People*, 737 P.2d 422, 425 (Colo.1987), the in-court testimony of the co-conspirator, *United States v. Smith*, 692 F.2d 693, 697–98 (10th Cir. 1982), or the defendant's own statements, *United States v. Roe*, 670 F.2d 956, 963 (11th Cir.), *cert. denied*, 459 U.S. 856, 103 S.Ct. 126, 74 L.Ed.2d 109 (1982).

## III.

■ In ruling that the prosecution had failed to establish the preliminary conditions necessary for the admissibility of the alleged co-conspirators' statements under CRE 801(d)(2)(E), the district court refused to consider the alleged co-conspirators' statements themselves in reaching its determination. In so ruling, the district court erred. On remand, the district court must consider the alleged co-conspirators' statements themselves, as well as any other corroborating evidence, in determining

whether the statements qualify for admission under CRE 801(d)(2)(E). If the district court is satisfied by a preponderance of the evidence, including the alleged co-conspirators' statements, that the evidentiary antecedents for admissibility have been established, then it should rule the statements admissible. If the court is not so satisfied, it should rule the statements inadmissible. In either event, the court is not authorized to enter a judgment of dismissal solely on the basis of its evidentiary ruling on admissibility.

The judgment of dismissal is accordingly reversed and the case is remanded to the district court for further proceedings consistent with the views herein expressed.