22CA1146 Peo v Braziel 07-25-2024 COLORADO COURT OF APPEALS Court of Appeals No. 22CA1146 Weld County District Court No. 19CR2864 Honorable Julie C. Hoskins, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Luke Donovan Braziel, Defendant-Appellant. JUDGMENT AFFIRMED IN PART AND VACATED IN PART, AND CASE REMANDED WITH DIRECTIONS Division II Opinion by JUDGE FOX Grove and Sullivan, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 25, 2024 Philip J. Weiser, Attorney General, Frank R. Lawson, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee The Reisch Law Firm, LLC, R. Scott Reisch, Robert LeVeen, Denver, Colorado, for Defendant-Appellant 
1 ¶ 1 Defendant, Luke Donovan Braziel, appeals the judgment of conviction entered on jury verdicts finding him guilty of several counts of conspiracy to distribute or possess, with intent to distribute, a controlled substance and of unlawful distribution of a controlled substance. We conclude that two of Braziel’s convictions must be merged into a single conspiracy conviction. We otherwise affirm the judgment. I. Background ¶ 2 This case arises from a Weld County Drug Task Force (Task Force) investigation into a drug distribution network that included Braziel. During the investigation, officers learned of Braziel’s cell phone number and lawfully obtained a wiretap on his phone line. They also placed a surveillance camera outside of his residence. The evidence revealed that Braziel was a distributor in the network who would receive methamphetamine and heroin from his supplier, Christopher Neel, that he then sold. ¶ 3 The prosecution charged Braziel with sixteen crimes alongside ten codefendants based on the wiretap and passive surveillance evidence. He was charged with fourteen counts of conspiracy to sell, distribute, or possess with intent to sell or distribute a 
2 controlled substance. Six counts were level 1 drug felonies because they involved quantities of methamphetamine exceeding 112 grams. See § 18-18-405(2)(a)(I)(B), C.R.S. 2023. Eight counts were level 2 drug felonies because they involved quantities of methamphetamine or heroin between 7 and 112 grams. See § 18-18-405(2)(b)(I)(B). Braziel was also charged with two counts of unlawful distribution of a controlled substance — one level 2 drug felony and one level 3 drug felony based on the quantities distributed. See § 18-18-
405(2)(b)(I)(B), (2)(c)(II). In all, Braziel was charged with six level 1 drug felonies, nine level 2 drug felonies, and one level 3 drug felony. ¶ 4 At trial, Braziel suggested that his proximity to the network did not equate to guilt. Braziel also argued that the prosecution failed to prove, beyond a reasonable doubt, that the voice on the wiretap was his. A jury found Braziel guilty as charged. The court sentenced Braziel to six consecutive twenty-year sentences for each level 1 drug felony — amounting to 120 years in the custody of the Department of Corrections (DOC). Braziel also received eight-year sentences for the level 2 drug felonies and a four-year sentence for the level 3 drug felony, all to run concurrently with the level 1 drug felony sentences. 
3 ¶ 5 On appeal, Braziel asserts three trial errors that he claims individually or cumulatively violated his right to a fair trial. He also seeks a proportionality review of his sentence and claims that two of his convictions were multiplicitous. II. Trial Errors ¶ 6 Braziel asserts that three trial errors violated his right to a fair trial individually or cumulatively. First, Braziel challenges the trial court’s denial of his motion for a mistrial. Second, he challenges the trial court’s admission of exhibits under CRE 801(d)(2)(E). Third, he claims that the prosecutor committed reversible misconduct. We address each claim in turn. A. Mistrial ¶ 7 First, Braziel challenges the trial court’s denial of his motion for a mistrial after the court commented, in front of the jury, that there was a less desirable way to present certain evidence. Braziel also claims, for the first time on appeal, that the prejudice resulting from the former claim of error was compounded by the admission of an exhibit potentially implicating CRE 404(b). 
4 1. Additional Background ¶ 8 Law enforcement obtained judicial approval to wiretap a cell phone they believed belonged to Braziel, which they referred to as target telephone three (TT-3) throughout trial. The wiretap recorded thirty days of calls and text messages that TT-3 made and received. ¶ 9 To prove that TT-3 belonged to Braziel, the prosecution planned to introduce a bond document from a different case where Braziel listed the number associated with TT-3 as his phone number. At a bench conference, the prosecutor explained that he did not intend to introduce the document “in its entirety” but planned to use it to establish the defendant’s identity and connection to TT-3. Defense counsel answered, “If the Court finds that it’s appropriate to allow that information in, I think the Court could do it in a way that doesn’t have a date attached to it.” The trial court concluded that the proposed exhibit was relevant and admissible to connect TT-3 to Braziel. The prosecutor left the bench conference under the impression that the information could come in through testimony or through the bond document but that if it came in through the document, the exhibit would first need to be redacted (which the parties had not yet done). 
5 ¶ 10 Back in the jury’s presence, the prosecutor asked a Task Force officer whether he was aware of a document containing Braziel’s name, date of birth, signature, home address, and the relevant phone number. The officer responded affirmatively. The following colloquy ensued in the jury’s presence: DEFENSE COUNSEL: That’s all hearsay. THE COURT: Do you want the document admitted? DEFENSE COUNSEL: I’m objecting that all of this is hearsay. THE COURT: I understand the objection, and while it is, the other way for the information to come in, as I thought we discussed before the jurors came in, is something that was less desirable. DEFENSE COUNSEL: I think if we’re going to have these kind of discussions, then we may need to do a bench conference here. THE COURT: All right. ¶ 11 At the bench, defense counsel said that she was “astounded” and “stunned” by the trial court’s “highly prejudicial” comment. The court responded, “I disagree that my comments had that effect. I understand your concern and I certainly will be mindful of that going forward.” The court further explained that the officer’s 
6 testimony was “innocuous” compared to the bond document, causing the court confusion when defense counsel objected to it. ¶ 12 Defense counsel moved for a mistrial, arguing that the court’s statement suggested to the jury that “negative and damaging” information existed about Braziel that they would not hear. The court disagreed, reasoning that the comment did not suggest why another form of evidence was less desirable, or for whom. While admitting that a bench conference would have been the more appropriate place to discuss the evidence’s form, the court concluded that a mistrial was not warranted. ¶ 13 Two days later, the prosecution recalled the officer and offered the bond document into evidence. The prosecutor represented that the document had been redacted and offered it into evidence “subject to further redaction.” The court received the exhibit without further record from defense counsel. ¶ 14 The exhibit that appears in our appellate record contains an unredacted reference to the criminal case number associated with the bond (a different case number than the one for which Braziel 
7 was on trial).
1 It also shows the date that Braziel signed the document, almost two years before the trial began. 2. Applicable Law and Standard of Review ¶ 15 A mistrial is a drastic remedy that is warranted only when the prejudice to the accused is so substantial that its effect on the jury cannot be remedied by other means. People v. Owens, 2024 CO 10, ¶ 125. “A trial court has broad discretion to grant or deny a mistrial motion, and an appellate court will not disturb its decision absent a gross abuse of discretion and prejudice to the defendant.” Id. We review the circumstances of each case to determine if the defendant was prejudiced. People v. Johnson, 2017 COA 11, ¶ 43. ¶ 16 A jury’s exposure to evidence of a defendant’s past criminal act is prejudicial, but “the prejudice is not necessarily of such magnitude as to require a mistrial.” Id. at ¶ 41. Where such evidence is brought to the jury’s attention, the factors relevant to the court’s mistrial determination include the nature of the improper evidence, the weight of the admissible evidence of guilt, 1 Earlier in the day, the court had instructed the prosecutor to submit a clean version of a different exhibit for the court record and a redacted version of the same exhibit for the jury. 
8 and the value of any cautionary instruction given. People v. Vigil, 718 P.2d 496, 505 (Colo. 1986). ¶ 17 “Generally, instructing the jurors to disregard erroneously admitted evidence is a sufficient remedy.” Johnson, ¶ 42. But a curative instruction will not suffice when “inadmissible evidence ‘is so highly prejudicial . . . it is conceivable that but for its exposure, the jury may not have found the defendant guilty.’” Id. (quoting People v. Everett, 250 P.3d 649, 663 (Colo. App. 2010)). To demonstrate prejudice to the accused in the context of extraneous information, there must be a reasonable possibility that the information affected the verdict. People v. Dore, 997 P.2d 1214, 1221 (Colo. App. 1999). ¶ 18 A trial judge must not demonstrate bias or prejudice toward any party or witness and must avoid “making rude comments or entering into discussions showing irritation in the presence of the jury.” People v. Acosta, 2014 COA 82, ¶ 92 (citation omitted); see also People v. Coria, 937 P.2d 386, 391 (Colo. 1997) (“Courts ‘must meticulously avoid any appearance of partiality . . . .’” (quoting People v. Hrapski, 718 P.2d 1050, 1054 (Colo. 1986))). “Casual remarks by the trial court while passing on objections to testimony 
9 do not constitute reversible error unless they reflect adversely upon the defendant or upon the issue of his . . . guilt or innocence.” People v. Rodriguez, 209 P.3d 1151, 1162 (Colo. App. 2008). The defendant must present more than speculation concerning the possibility of prejudice. Id. “The test is whether the trial judge’s conduct so departed from the required impartiality as to deny the defendant a fair trial.”
2 Id. 3. Application ¶ 19 We perceive no abuse of discretion in the trial court’s conclusion that a mistrial was not warranted on this record. ¶ 20 As an initial matter, the opening brief suggests two possible reasons why a mistrial was required. The judge’s comment either exposed the jury to extraneous evidence of Braziel’s criminal history or suggested bias against Braziel. But a careful reading of the opening brief reveals that Braziel’s primary concern is an evidentiary one. Braziel does not argue on appeal that the court 2 As addressed in more detail below, we interpret Braziel’s primary challenge as evidentiary. In contrast to the argument made at trial, Braziel does not tether his assertions on appeal to the framework of judicial bias or the appearance of partiality. As such, we need not address the applicable standard of reversal for such claims. 
10 had an interest in the outcome of the trial, that it assumed the role of advocate, or that its tone divulged disfavor toward him. See Acosta, ¶¶ 92-94. We thus limit our review to whether the court’s comment exposed the jury to “extrajudicial evidence” bearing on Braziel’s guilt — as he claims — and conclude that it did not. ¶ 21 We are not persuaded that the court’s reference to “the other way for the information to come in” (i.e., the bond document) was “extrajudicial.” The prosecution presented the court with the document’s contents as an offer of proof, and the court determined that it was relevant and admissible. Thus, this case is starkly distinguishable from Scott v. Ohio, 480 U.S. 923, 925 (1987), on which Braziel relies. In that case, the trial judge expressed his opinion that the defendant committed the crime based on what he read in a newspaper article. Id. at 924. Here, the alleged “extrajudicial” information that the court referenced was an alternative, equally admissible, means to connect Braziel and TT-3. And while we agree that a jury’s exposure to inadmissible bad act evidence is generally prejudicial, Johnson, ¶ 41, the evidence in question was admissible, see CRE 801(d)(2); CRE 803(8). The court 
11 had previously ruled that it was relevant and later admitted it without further objection from defense counsel. ¶ 22 The trial court aptly noted that it would have been more appropriate to discuss the issue outside the jury’s presence. We agree, to be sure. But we are not persuaded that the court’s brief remark warranted the drastic remedy of a mistrial for the following reasons. ¶ 23 First, the trial court instructed the jury that its evidentiary rulings should not be construed to indicate a bias toward or against either party. Upon defense counsel’s motion for mistrial, the court offered to repeat that instruction in general terms as a means to cure its remark. Defense counsel continued making her record without acknowledging or accepting the court’s offer. The court also gave the jurors a lengthy and detailed instruction prohibiting them from considering any evidence other than what the parties presented at trial. ¶ 24 Second, the remark was ambiguous and did not obviously draw the jury’s attention to Braziel’s criminal history. At most, the comment suggested that the same information connecting Braziel to TT-3 could be introduced in a different, less desirable way (via the 
12 exhibit instead of the officer’s testimony). The trial court did not say that the alternate route was less desirable for Braziel. It could have been less desirable to the court, to the parties, for the sake of efficiency, or based on any other evidentiary concern that the court instructed the jurors not to consider. Nor did the court say that the alternate route was damaging to Braziel because it was more prejudicial. And while an attorney might assume that a “less desirable” form of evidence is automatically damaging to a defendant, we hesitate to conclude that the court’s brief comment, devoid of context, so obviously invoked Braziel’s criminal history that a reasonable juror would have taken it that way. Cf. People v. Ramos, 2012 COA 191, ¶¶ 38, 44 (holding that the trial court’s comment that the defendant “did something” could have confused or misled the jury and should be avoided on remand), aff’d, 2017 CO 6. ¶ 25 Third, the remark was fleeting and was not brought back to the jury’s attention after it was made. See People v. Shreck, 107 P.3d 1048, 1060 (Colo. App. 2004) (concluding that prejudice is minimized where a reference to uncharged crimes was brief and not repeated in front of the jury); Johnson, ¶ 45 (same). 
13 ¶ 26 For these reasons, the trial court did not abuse its discretion by denying Braziel’s mistrial motion. ¶ 27 To the extent that Braziel challenges the exhibit’s reference to a different criminal case number, the contention was not preserved, and any error was not plain. See Hagos v. People, 2012 CO 63, ¶ 14 (holding that plain error is obvious, substantial, and so undermines the fundamental fairness of trial as to cast serious doubt on the reliability of the judgment of conviction). ¶ 28 The prosecutor told the trial court that the exhibit had been partially redacted, and defense counsel raised no objection to the redactions. Thus, we are unpersuaded that the court obviously and substantially erred by admitting the bond document. See People v. Glasser, 293 P.3d 68, 74 (Colo. App. 2011) (no error where challenged evidence resulted from a mistake by the parties). The document was one of over a hundred exhibits introduced at trial, it was not referenced again after its admission, and it was cumulative of testimony that the jury had already heard. The case number in the corner of the document was small, it was never brought to the jury’s attention, and it began with the same year as the case at issue (19CR) — demanding close attention to detail for the 
14 discrepancy to be discovered. And Braziel’s convictions were supported by recordings of phone calls that he made, text messages that he exchanged with his supplier and customers, and video surveillance of his home — further reducing the possibility that the admission of a bond document from a different case cast serious doubt on the reliability of his convictions. See Shreck, 107 P.3d at 1060 (“[A] mistrial is not automatically required simply because some reference was made to other inadmissible bad act evidence.”); People v. Elagnaf, 829 P.2d 484, 489 (Colo. App. 1991) (“Moreover, the defendant has failed to show that the jury’s exposure to an exhibit which was referred to during the trial and contained information cumulative to the testimony of one of the trial witnesses prejudiced his defense. Under these circumstances, we conclude no error, much less plain error, was occasioned.”). B. Admission of the Drug Ledgers ¶ 29 Second, Braziel challenges the admission of ledgers documenting Braziel’s ongoing debt to Neel, claiming that the prosecution failed to establish by a preponderance of the evidence that they were made in the course of the charged conspiracy. 
15 1. Additional Background ¶ 30 Michael Wright, a Task Force officer, was certified as an expert in drug culture and drug distribution. Wright testified that in the drug industry, distributors frequently use ledgers to keep track of paid and unpaid debts. Wright testified to a process called “fronting,” where one person lends drugs to another person without being paid, with the understanding that the purchase price will be repaid once the borrowed drugs are sold. Ledgers, he testified, document debts as they are created and satisfied. ¶ 31 The prosecution introduced ledgers found in Neel’s residence that documented the ongoing tabs of Braziel and others. Defense counsel objected on relevance, hearsay, foundation, and speculation grounds. The trial court initially overruled the objection, but almost immediately followed up with the prosecution about the hearsay objection. After hearing argument on the hearsay issue, the court concluded that the ledgers were nontestimonial co-conspirator statements and that sufficient evidence, including phone calls between Neel and Braziel and surveillance footage of their interactions, corroborated the fact that Neel created the ledgers. Defense counsel then objected to the 
16 ledgers’ admission because the exhibits contained at least two distinct handwritings, and the prosecution presented no handwriting experts or testimony from anyone who observed Neel making the ledgers. ¶ 32 The court then asked the prosecution to lay further foundation regarding the source of the handwriting. After doing so, the prosecution argued that the names and amounts documented in the ledgers corresponded with the wiretap and passive surveillance evidence, showing that the ledgers were made by Neel or at his direction. Satisfied with the additional record and argument, the court received the ledgers into evidence under CRE 801(d)(2)(E). 2. Applicable Law and Standard of Review ¶ 33 Hearsay, an out-of-court statement offered to prove the truth of the matter asserted, is generally inadmissible. See CRE 801(c); CRE 802. Under CRE 801(d)(2)(E), however, an out-of-court statement is not hearsay if it is offered against a party, and it was made by a co-conspirator of the party. To admit evidence under CRE 801(d)(2)(E), the proponent of the evidence (here, the prosecution) must show “by a preponderance of the evidence that the defendant and the declarant were members of a conspiracy and 
17 that the declarant’s statement was made during the course and in furtherance of the conspiracy.” People v. Montoya, 753 P.2d 729, 733-34 (Colo. 1988). ¶ 34 A court may consider the alleged co-conspirator’s statement as foundation for its admissibility, but there must also be some corroborating evidence of the conspiracy apart from the alleged co-
conspirator’s statement itself. Id. at 736. The required corroborating evidence may take several forms, including circumstantial evidence of the conspiracy or the defendant’s own statements. Id. ¶ 35 We review a trial court’s rulings on the admissibility of evidence for an abuse of discretion. People v. Brown, 2022 COA 19, ¶ 57. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or where it applies an incorrect legal standard. People v. Rodriguez, 2022 COA 98, ¶ 12. ¶ 36 On appeal, Braziel argues that the trial court improperly admitted the ledgers under CRE 801(d)(2)(E), but for a different reason. At trial, defense counsel argued that the prosecution failed to lay sufficient foundation to establish by a preponderance of the evidence that Neel was the declarant. While Braziel briefly 
18 acknowledges that argument in the opening brief, his primary contention is that nothing in the record connects the ledger entries to any of the discrete, and time-limited, drug distribution conspiracies that formed the basis of the charges against him. Because Braziel makes the timing argument for the first time on appeal, we reverse only for plain error. See Hagos, ¶ 14. 3. Application ¶ 37 For the challenged statements to be admissible, the prosecution had to prove by a preponderance of the evidence that the ledgers were made during the course and in furtherance of the conspiracy. See Montoya, 753 P.2d at 733-34. Braziel claims that the prosecution failed to do so because the ledgers were not dated. ¶ 38 Even if we assume the trial court erred in admitting the ledgers as statements made during the course and in furtherance of the conspiracy, any error was not plain such that the court was required to intervene on its own. First, the ledgers did not amount to a substantial part of Braziel’s trial. True, they did implicate his ongoing debt with Neel. But that was not new information as far as the jury was concerned; indeed, the wiretap evidence documented Braziel and Neel’s conversations about the status of Braziel’s debt. 
19 Second, the ledgers amounted to a very small portion of the testimony in the context of the six-day trial. They were not as prejudicial to Braziel as the wiretap evidence, passive surveillance, and controlled buy involving a confidential informant. And the prosecution did not reference the ledgers during closing argument. ¶ 39 To the extent that Braziel asserts the preserved claim of error on appeal — that the prosecution failed to establish that Neel was the declarant — we are unpersuaded. The trial court acted within its discretion in concluding that the following evidence established, by a preponderance of the evidence, that the ledgers were made by Neel or transcribed at his direction: • The ledgers were found in Neel’s residence. • The ledgers documented debts of Neel’s known associates, including some of Braziel’s co-conspirators. • The ledgers corresponded with previously admitted evidence of ongoing debt between Neel and Braziel related to drug distribution. • A love note was left for “Christopher” (Neel’s first name) by his wife in an adjacent notebook page on one of the ledgers. 
20 ¶ 40 Further, Braziel had ample opportunity to challenge the ledgers on cross-examination. See People v. Lesslie, 939 P.2d 443, 451 (Colo. App. 1996) (“Once authenticity is established, defects in the physical evidence go to the weight of that evidence.”); see also Montoya, 753 P.2d at 735 (trial court may consider weight of weaknesses in the proffered evidence in evaluating preliminary question of admissibility). Perceiving no reversible error in the ledgers’ admission for the foregoing reasons, we need not decide whether the ledgers were also admissible as nonhearsay statements not offered for the truth of the matter asserted. C. Prosecutorial Misconduct ¶ 41 Third, Braziel claims that the prosecutor committed reversible misconduct by likening Braziel’s conduct to “selling poison in the community.” 1. Additional Background ¶ 42 During closing argument, the prosecutor referred to the methamphetamine and heroin that Braziel distributed as “poison”: And we know here based on all the evidence, the totality of the evidence, this drug trafficking organization that consisted of Mr. Braziel, Christopher Neel . . . and several others . . . that the objective, the common goal, 
21 the business was the distribution of poison or illegal narcotics into this community. Defense counsel did not object. The prosecutor then said, “So over a 30-day span the defendant distributed 14 pounds, one pound less than that bag that I just held up, out into our community.” Defense counsel objected to the second statement, and the trial court warned the prosecutor to avoid appeals to community safety. The court repeated its instruction to the jury to not let sympathy or emotion influence their decision. ¶ 43 The prosecutor concluded his argument by saying, without objection, “The evidence supports that the defendant was distributing narcotics in this community . . . .” ¶ 44 During rebuttal closing, the prosecutor said, “He’s profiting from poison,” and “[w]e’re accusing him of distributing drugs in the community.” Defense counsel did not object. 2. Applicable Law and Standard of Review ¶ 45 We engage in a two-step analysis when reviewing claims of prosecutorial misconduct. Wend v. People, 235 P.3d 1089, 1096 (Colo. 2010). First, we determine whether the prosecutor’s conduct was improper based on the totality of the circumstances. Id. 
22 Second, we decide whether such actions warrant reversal under the proper standard of review. Id. “While a prosecutor can use every legitimate means to bring about a just conviction, [he] has a duty to avoid using improper methods designed to obtain an unjust result.” Domingo-Gomez v. People, 125 P.3d 1043, 1048 (Colo. 2005). ¶ 46 “Prosecutors may not use arguments calculated to inflame the passions and prejudices of the jury.” People v. Salazar, 2023 COA 102, ¶ 50. Nor should a prosecutor ask the jury to consider the wishes of the community or send the community a message about a particular type of crime in reaching its verdict. People v. Marko, 2015 COA 139, ¶ 221, aff’d on other grounds, 2018 CO 97. ¶ 47 We review the unpreserved references to “poison” for plain error, see Hagos, ¶ 14, and will not reverse unless the misconduct was obvious and substantial, and so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction, People v. Smith, 2018 CO 33, ¶ 24. ¶ 48 “Prosecutorial misconduct in closing argument rarely constitutes plain error.” People v. Smalley, 2015 COA 140, ¶ 37; see also Hagos, ¶ 23 (Reversals on plain error review “must be rare to maintain adequate motivation among trial participants to seek a 
23 fair and accurate trial the first time.”). Reversal for plain error is only warranted when there is a substantial likelihood that the error affected the verdict. People v. Constant, 645 P.2d 843, 847 (Colo. 1982). Thus, even if improper, a prosecutor’s comments during closing do not necessarily warrant reversal if the combined prejudicial impact of the statements does not cast serious doubt on the reliability of the conviction. People v. Nardine, 2016 COA 85, ¶ 66. ¶ 49 To the extent that Braziel preserved a general community safety argument, the court addressed the objection by warning the prosecutor not to make appeals about community safety and instructing the jury not to let bias or sympathy influence their decision. Defense counsel did not request further relief, and appellate counsel does not challenge the adequacy of the court’s remedy. 3. Application ¶ 50 The prosecutor’s comments about poison in the community were not one of those rare instances that so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. See Smith, ¶ 24. 
24 ¶ 51 First, while the statements at times referenced “the community,” the prosecutor never asked the jury to send a message to the community or use the community’s wishes as a reason to reach a verdict that was not otherwise grounded in the evidence. See Marko, ¶ 221. Instead, the argument was grounded in the evidence that the jury was to consider in reaching its decision. And the references were brief, passing comments made in the context of a fifty-page argument largely focused on the wiretap evidence. See Salazar, ¶ 52 (prosecutor’s comment during closing argument did not warrant reversal under the plain error standard where the remark was fleeting in the context of the argument as a whole); see also United States v. Moya-Breton, 329 F. App’x 839, 845-46 (10th Cir. 2009) (finding no plain error where the prosecutor urged the jury to take drug dealers off the streets and to “help keep these kinds of poisons away from their intended recipients”). ¶ 52 Second, overwhelming evidence supported Braziel’s convictions, including wiretap evidence documenting him engaging in drug deals, passive surveillance corroborating that the deals took place, and a controlled buy where Braziel sold drugs to a confidential informant. See People v. Estes, 2012 COA 41, ¶ 42 
25 (prosecutorial misconduct in closing argument did not warrant reversal under the plain error standard because, among other things, overwhelming evidence supported the guilty verdict). ¶ 53 Finally, defense counsel’s failure to contemporaneously object to the “poison” references Braziel now challenges on appeal indicates that the comments were not overly damaging in the context of live argument. See Domingo-Gomez, 125 P.3d at 1054; People v. Strock, 252 P.3d 1148, 1153 (Colo. App. 2010) (counsel’s failure to object is a factor that may be considered in examining the impact of a prosecutor’s argument and may demonstrate that counsel believed the live argument was not overly damaging). ¶ 54 Accordingly, because any misconduct by the prosecutor during closing argument neither substantially influenced the verdict nor cast serious doubt on the reliability of the judgment of conviction, reversal is not required. See Hagos, ¶ 14; Nardine, ¶ 66. D. Cumulative Error ¶ 55 Braziel next contends that we must reverse because the trial court’s errors, together, undermined the fairness of the trial. ¶ 56 “[R]eversal [is] required when ‘the cumulative effect of [multiple] errors and defects substantially affected the fairness of 
26 the trial proceedings and the integrity of the fact-finding process.’” Howard-Walker v. People, 2019 CO 69, ¶ 24 (quoting People v. Lucero, 200 Colo. 335, 344, 615 P.2d 660, 666 (1980)). While plain errors can be considered for cumulative error purposes, we cannot discern how any combination of the preserved claims of error and the unpreserved claims of error — which were not plain — could have deprived Braziel of a fair trial. See People v. Vidauri, 2019 COA 140, ¶ 97, rev’d in part on other grounds, 2021 CO 25. III. Proportionality Review ¶ 57 The trial court sentenced Braziel to six consecutive twenty-
year sentences for each level 1 drug felony for which he was convicted — amounting to 120 years in DOC custody. Braziel now asks this court to remand the case to the trial court for a proportionality review. Because Braziel’s rationale for a proportionality review is unavailing, remand is not warranted. ¶ 58 The United States and Colorado Constitutions prohibit sentences that are “grossly disproportionate” to the crime. Wells-
Yates v. People, 2019 CO 90M, ¶¶ 5, 10. When a defendant requests a proportionality review, he alleges that his sentence is “grossly disproportionate to the crime” and is, therefore, an 
27 unconstitutionally cruel and unusual punishment. People v. Kennedy, 2023 COA 83M, ¶ 12. We review de novo whether a sentence is grossly disproportionate. Wells-Yates, ¶ 35. ¶ 59 A proportionality review involves a two-step process: an abbreviated proportionality review and, if needed, an extended proportionality review. Kennedy, ¶ 12. The abbreviated proportionality review requires the sentencing court to compare the gravity or seriousness of the offense with the harshness of the penalty to determine whether the sentence gives rise to an inference of gross proportionality. Id. at ¶ 13. If the court finds such an inference, it conducts an extended proportionality review, comparing the defendant’s sentence to sentences for other crimes in the same jurisdiction and sentences for the same crime in other jurisdictions. Wells-Yates, ¶¶ 7-8, 17. “[A]n abbreviated proportionality review will almost always yield a finding that the sentence is not unconstitutionally disproportionate . . . .” Id. at ¶ 21. ¶ 60 “While most proportionality challenges occur in habitual criminal cases, the same principles apply in nonhabitual cases.” 
28 People v. Sellers, 2022 COA 102, ¶ 57 (cert. granted on other grounds May 15, 2023). ¶ 61 “If there are multiple triggering offenses, the reviewing court must look at the sentence imposed for each such offense and engage in a proportionality review of that sentence because each sentence represents a separate punishment for a distinct and separate crime.” Wells-Yates, ¶ 24 (citing Close v. People, 48 P.3d 528, 538-39 (Colo. 2002)) (rejecting proportionality review of the cumulative impact of several sentences). If a proportionality review were to assess “the cumulative effect of the sentences imposed on all the triggering offenses, it could result in an inference of gross disproportionality merely because the defendant committed multiple crimes.” Id. Thus, any review of Braziel’s sentences would be of each sentence individually. See id. at ¶ 74. ¶ 62 Braziel does not ask for a proportionality review of each of his level 1 drug felony sentences; instead, he asks only for a review of the “de facto life sentence” resulting from the consecutive imposition of his sentences. Wells-Yates precludes the relief Braziel seeks. See id. 
29 ¶ 63 But even individually, Braziel’s sentences are unlikely to give rise to an inference of gross disproportionality. True, the Colorado Supreme Court recently held that not all narcotics offenses are per se grave or serious. Id. at ¶ 66. But Braziel was convicted of purchasing significant quantities of methamphetamine and heroin from his supplier for the purpose of resale. Indeed, the evidence showed that Braziel successfully resold the drugs. Further, Braziel was sentenced in the middle of the presumptive sentencing range for level 1 drug felonies without sentence enhancers or habitual counts, and his offenses are parole eligible. See § 18-1.3-
401.5(2)(a), C.R.S. 2023; see also Wells-Yates, ¶ 14. Thus, we conclude that even a properly raised proportionality challenge would have been unavailing under the initial abbreviated step. IV. Merger ¶ 64 Finally, Braziel contends that two of his level 1 drug felony convictions — counts thirteen and fourteen — were multiplicitous because they involved a single transaction on the same day. ¶ 65 The United States and Colorado constitutions prohibit placing someone twice in jeopardy for the same offense. Whiteaker v. People, 2024 CO 25, ¶ 10. Thus, punishing an individual twice for 
30 the same offense runs afoul of double jeopardy principles. People v. Grosko, 2021 COA 28, ¶ 24. We do not review double jeopardy sentencing errors for plain error; instead, we automatically merge the multiplicitous convictions to remedy such errors. Whiteaker, ¶ 24. ¶ 66 To determine whether a defendant is prosecuted for multiplicitous charges under the same statute, we apply a two-
pronged test. People v. Manzanares, 2020 COA 140M, ¶ 41. First, we determine whether the statutorily defined unit of prosecution permits the charging of multiple offenses. Id. Next, we review the allegations in support of each offense to determine whether the defendant’s conduct constituted factually distinct offenses. Id. ¶ 67 Section 18-2-201(4), C.R.S. 2023, provides that “[i]f a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are part of a single criminal episode.” Accordingly, if a court concludes multiple alleged conspiracy offenses are all part of a single criminal episode, then only one conspiracy exists, and the district court should dismiss any multiplicitous charges. Pinelli v. Dist. Ct., 197 Colo. 555, 558-
59, 595 P.2d 225, 228 (1979). Conversely, if the trial court finds 
31 that the substantive offenses were not part of the same criminal episode, then the court should deny a motion to dismiss the charges as multiplicitous. Id. ¶ 68 To determine whether a defendant’s conduct constitutes factually distinct offenses in the conspiracy context, we apply various factors, including whether (1) the acts alleged occurred during the same timeframe; (2) the type of overt act alleged is the same; (3) the unlawful objective of the alleged conspiracies is the same; (4) the modus operandi is the same; and (5) the same evidence would be relevant to both charges. Pinelli, 197 Colo. at 558, 595 P.2d at 227. The following factors indicate that the prosecution charged different criminal episodes: (1) different parties; (2) different counties; (3) different agreements; and (4) different overt acts. People v. Davis, 2017 COA 40M, ¶ 18. ¶ 69 Here, the conduct underlying counts thirteen and fourteen is best characterized as a singular agreement to exchange a specified quantity of methamphetamine in two installments. On September 28, 2019, Braziel tried to purchase a pound of methamphetamine from Neel. Neel told Braziel that he had 308 grams of methamphetamine that Braziel could pick up right away, and that 
32 he would owe Braziel the additional 140 grams. Neel would not charge Braziel for the pound until he could provide the remaining 140 grams. The pair exchanged the first 308 grams around 5 p.m. Later that night, Braziel and Neel arranged a second meeting to exchange (1) the remaining 140 grams, and (2) the proceeds Braziel had thus far received from selling the first installment. That exchange occurred at approximately 11:40 p.m. ¶ 70 On these facts, we cannot conclude that Braziel’s conduct constituted factually distinct offenses. The exchanges involved the same two people, in the same county, within hours of each other. See id. Notably, and unlike the other charged conspiracies, these counts originated from the same agreement: that Braziel would purchase one pound of methamphetamine from Neel. See Pinelli, 197 Colo. at 558, 595 P.2d at 227. The evidence of the singular agreement underlying the transactions is relevant to both counts, further suggesting multiplicity. See id. Because the two conspiracy counts resulted from the same agreement, we conclude that the pound’s delivery in two installments is of no moment. See Davis, ¶ 26. 
33 ¶ 71 Thus, we merge Braziel’s convictions for counts thirteen and fourteen and remand for the trial court to amend the mittimus. V. Disposition ¶ 72 The judgment of conviction is affirmed in part and vacated in part, and the case is remanded with directions for the trial court to amend the mittimus to reflect merger of Braziel’s convictions for counts thirteen and fourteen. JUDGE GROVE and JUDGE SULLIVAN concur.